# In the United States Court of Federal Claims

|  |  |
|---|---|
| MATTHIJS VAN LEEUWEN d/b/a LIONSHARE PROPERTIES, <br><br>                        Plaintiff, <br><br>   v. <br><br>THE UNITED STATES, <br><br>                       Defendant. | No. 23-cv-0280 <br> (Filed: May 7, 2025) |

Matthijs van Leeuwen, pro se.

Isabelle Aubrun, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for Defendant. With her on the briefs were Brian M. Boynton, Principal Deputy Assistant Attorney General, Patricia M. McCarthy, Director, and Tara K. Hogan, Assistant Director.

## OPINION AND ORDER

Meriweather, Judge.

      Plaintiff, Matthijs van Leeuwen ("Mr. van Leeuwen"), appearing pro se, seeks damages from the United States resulting from his purchase of a former National Park Service ("NPS") 2005 Silvership boat through an online auction administered by the United States General Services Administration ("GSA"). Specifically, Mr. van Leeuwen alleges that although he paid for the boat, the United States failed to deliver the boat, and thus the United States breached the contract by keeping "both the boat and the money." Am. Compl., ECF No. 23 at ¶ 63. On December 6, 2023, the United States filed its Motion to Dismiss, ECF No. 26, arguing that Mr. van Leeuwen lacks standing to bring this case and, alternatively, that the complaint fails to state a viable claim of relief. Having reviewed the relevant filings,[1] the law, and for the reasons explained herein, the Court hereby **GRANTS** the United States' Motion to Dismiss.

---

[1] The following filings are relevant to this Order: Compl., ECF No. 1; Am. Compl., ECF No. 23; Mot. to Dismiss Am. Compl., ECF No. 26 ("Mot. to Dismiss"); Pl.'s Resp. to Def.'s Mot. to Dismiss, ECF No. 44 ("Resp."); and Def.'s Reply in Support of its Mot. to Dismiss, ECF No. 45 ("Reply"). Throughout, page citations to documents in the record refer to the document's original pagination, unless the page is designated with an asterisk (*e.g.*, *1), in which case the reference is to the pagination assigned by PACER/ECF.

**BACKGROUND**

**I.   *Factual Background***

In 2021, GSA placed the Silvership boat, two "Honda 225HP Motors," and a "Lodemaster trailer" up for online auction. *See* Compl., Ex. A at 1–2.[2] Although the auction listing stated that the boat was in "fair condition," the "Motors [were] in poor condition," and the "[t]railer [was] in good condition with [a] spare tire," *id.* at 1, the boat's product description cautioned, in bold font, that the boat's "CONDITION IS NOT WARRANTED" and that "[d]efects may exist and repairs may be needed." *Id.* at 2. The advertisement similarly instructed bidders to "Read Terms and Conditions" and "[i]nspect before bidding." *Id.* at 2.

In order to place a bid, all bidders were required to register an account on GSAAuctions.gov. But Mr. van Leeuwen[3] did not register individually; instead, he used Lionshare Properties' ("Lionshare")—Mr. van Leeuwen's own limited liability company[4]—email to register. *Id.* ¶ 2.1, Ex. K; *see also* Am. Compl. ¶ 6. By registering to place a bid, Lionshare agreed to all the terms and conditions governing "all facets of the [GSA] auction."

---

[2] The Court notes that Mr. van Leeuwen's Amended Complaint does not attach all the exhibits appended to his first Complaint. *Compare* Compl., *with* Am. Compl., Exs. A–L. However, a court may incorporate such a document by reference, and thus properly consider it in deciding a motion to dismiss, "if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claims." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1005 (9th Cir. 2018); *Terry v. United States*, 103 Fed. Cl. 645, 652 (2012). Moreover, "where a motion to dismiss challenges the complaint's jurisdictional allegations, 'the allegations in the complaint are not controlling, and only uncontroverted factual allegations are accepted as true.' . . . In such a situation, the court 'may review evidence extrinsic to the pleadings.'" *DDS Holdings, Inc. v. United States*, 158 Fed. Cl. 431, 436 (2022) (quoting *Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1583 (Fed. Cir. 1993)).

Here, the Court may properly consider the exhibits appended to Mr. van Leeuwen's original Complaint because: (1) the exhibits are incorporated by reference because Mr. van Leeuwen cites these same exhibits to support both the claims in his Amended Complaint and his arguments in opposition to dismissal now; and (2) the United States challenges Mr. van Leeuwen's jurisdictional allegations. *See, e.g.*, Am. Compl. ¶¶ 8, 9, 10, 12, 32 (citing "Pl. Exs. 1, 2, 3, 4, 5"); *Power Analytics Corp. v. Operation Tech., Inc.*, 820 Fed. App'x 1005, 1017 n.8 (Fed. Cir. 2020) ("It is well-established that a district court may consider documents that are incorporated by reference in the allegations.").

[3] For clarity, "Mr. van Leeuwen" is used throughout this Opinion when discussing both his actions taken in his individual capacity and those taken as an agent of Lionshare. Any reference to "Mr. van Leeuwen" herein does not imply privity with Defendant.

[4] Lionshare Properties is a limited liability company incorporated in Washington State. Mr. van Leeuwen is both the registered agent and owner of Lionshare. *See* Compl., Ex. K.

Compl., Ex. J at 1; *see also* GSA, *Terms and Conditions* (Jan. 30, 2020), https://www.gsaauctions.gov/auctions/terms-conditions ("If a bidder does not agree to the presented terms and conditions they cannot place bids on property.").[5]

On December 13, 2021, Mr. van Leeuwen, while purportedly "doing business as [] Lionshare," placed the highest bid of $61,025.00 on the boat. Am. Compl. ¶¶ 1, 7, 10. However, that bid did not "meet the reserve" set by the seller, so the auction concluded with the boat unsold. Am. Compl., Decl. of Matthijs van Leeuwen at ¶ 2. That same day, Mr. van Leeuwen, using a Lionshare email address,[6] emailed GSA indicating that he was still interested in purchasing the boat at the same price he initially bid. Resp. at 11, Ex. A-1. On December 16, 2021, GSA accepted Lionshare's "revived" bid via email, and the parties entered into a purchase and sale agreement (the "Agreement"). *See* Am. Compl. ¶¶ 7, 9–10.

At the time of purchase, the boat was located at an NPS facility in Houghton, Michigan. *See id.* at 2; Compl., Ex. A. Under the terms of the Agreement, Lionshare was "responsible for packing, loading, and removing" the boat from Michigan to Washington state. Compl., Exs. A, J at 1–2 ("The Purchaser must make all arrangements necessary for packing, removal, and transportation of property. The Government will not act as liaison in any fashion between the Purchaser and carrier."). Lionshare stayed in contact with NPS to confirm that the boat was adequately secured to the trailer in a manner sufficient "for a trip across the nation," and once it received such confirmation, hired a third-party shipper to transport the boat to Washington state. Am. Comp. ¶¶ 11, 15, 21; Compl., Exs. A (email correspondence between Mr. van Leeuwen, the third-party shipper, and others), C (email correspondence between Mr. van Leeuwen, NPS, and others). On January 12, 2022, that third-party shipper picked up the boat from the NPS property in Michigan. *See* Am. Compl. ¶¶ 15, 21.

But the boat never reached its destination—"almost immediately" after the shipper departed, "a tire blew on the trailer and sent the trailer and the boat flying off the highway." *Id.* ¶¶ 22–23. Due to the damage from the crash, Lionshare hired a private towing company, Dynamite Towing, to tow the boat and trailer to storage. *See id.* ¶ 24.

That same day, Lionshare informed both NPS and GSA of the accident via email. *See id.* ¶ 27; *see also* Compl., Ex. D. GSA asked if Lionshare "would be interested in [] alternative dispute resolution," subject to its agreement to provide estimates on the cost of repair. *See* Am. Compl., ¶ 29; Compl., Ex. D. But Lionshare was unable to get an estimate for repairs. *See*

---

[5] The Court finds it appropriate to consider the terms and conditions governing GSA auctions in deciding the United States' Motion to Dismiss, for the same reasons described earlier in this Opinion. *See supra*, note 2. Specifically, Mr. van Leeuwen refers extensively to the underlying agreement throughout his pleadings and, in fact, the agreement "forms the basis" of his breach claim. *Khoja*, 899 F.3d at 1005; *see also* Compl., Exs. A, J; Am. Compl. ¶¶ 56–67. And since the United States challenges the Court's jurisdiction, the Court "may review evidence extrinsic to the pleadings." *Cedars-Sinai*, 11 F.3d at 1583.

[6] In fact, all email communications referenced herein were conducted via Lionshare's email address. *See generally*, Compl.; Am. Compl.

Compl., Ex. D.  Instead, Lionshare proposed "two scenarios that could bring a resolution to the dispute" suggesting, alternatively that GSA either: (1) take the boat back and issue a full refund; or (2) issue a partial refund for the cost of the damage.  *See id.* at 8.  On January 18, 2022, GSA requested clarification on whether, under the first scenario, Lionshare would "return[] the vessel and the trailer or just the vessel." *Id.* at 9.  Mr. van Leeuwen confirmed Lionshare would return both the boat and trailer, and GSA responded: "Please return the boat and trailer to the agency.  Once this is done and the custodian acknowledges that the items have been returned, you will receive a full refund." Am. Compl. ¶ 32; *see also* Compl., Ex. D at 9; Compl., Ex. E at 1.

During this time, Lionshare unsuccessfully sought to recover the costs of towing and storage from the shipper's business liability insurance.  *See* Am. Compl. ¶¶ 33–40.  Mr. van Leeuwen alleges that the insurer denied Lionshare's claim because "NPS was responsible for improperly prepping the trailer" and the accident was caused by "a defect trailer [*sic*] of which the tire blew off." *Id.* ¶ 33.  Mr. van Leeuwen, in his individual capacity, filed suit against the insurer, however, that court dismissed Mr. van Leeuwen's claims for lack of standing because he was a third party to the insurance contract.  *See id.* ¶¶ 40–41.  Separately, Lionshare also unsuccessfully sought to recover these costs from NPS.  *See id.* ¶¶ 47–48.

On February 2, 2022, Lionshare emailed GSA back, stating that the "steep" towing and storage costs remained outstanding and that it "cannot take any part in this" because "the boat has never been in [Mr. van Leeuwen's] possession" and instead "urge[d] [GSA] to get this taken care of as the storage cost . . . is accumulating." Am. Compl. ¶ 36; *see also* Compl., Ex. E at 1.  Ultimately, the parties never reached an agreement as to who should be responsible for the costs of recovery and towing.  Am. Compl. ¶¶ 36, 38; *see also* Compl., Exs. D, E, J.  And on March 2, 2022, GSA issued a contracting officer final decision letter,[7] denying Lionshare's refund request as to the costs of storage and towing and denying the refund request as to the cost of the boat unless Lionshare returned the boat and the trailer.  *See* Compl., Ex. J.

On November 21, 2022, Mr. van Leeuwen emailed NPS and GSA that they should "expect the boat to returned sometime this week." Compl., Ex. G at 1.  GSA responded by letter, explaining that the "final decision from March 2, 2022 remains," and reminding Mr. van Leeuwen that by registering on the GSA website, Lionshare agreed to the terms and conditions governing GSA auctions.  *Id.* at Ex. J.  As of the filing of the Amended Complaint, "the cost of recovery and towing" totaled $21,794.50.  Am. Compl. ¶ 24.  To the Court's knowledge, the boat remains in Dynamite's possession, where it continues to accrue storage costs.  *Id.* ¶ 25.

## II.   *Procedural History*

Mr. van Leeuwen initiated this litigation on February 23, 2023, by filing a complaint against the United States seeking damages for the United States' alleged failure to deliver the boat at issue and breach of contract.  *See generally*, Compl.  Mr. van Leeuwen subsequently retained counsel and filed an amended complaint, which also seeks damages, and raises claims for breach of contract and unjust enrichment.  *See* Am. Compl.  After the filing of the operative

---

[7] Mr. van Leeuwen states that he did not receive this final decision letter sent via certified mail.  *See* Am. Compl. ¶ 52.

4

amended complaint, Mr. van Leeuwen moved to remove his attorney of record from the case and has proceeded pro se since the Court granted that motion. *See* Order, ECF No. 35.

After the amended complaint was docketed, the United States filed the instant Motion to Dismiss, wherein it argues that Mr. van Leeuwen lacks standing to assert his breach-of-contract claim because Mr. van Leeuwen's company, Lionshare, and not Mr. van Leeuwen himself, was the real party in interest to the Agreement. *See* Mot. to Dismiss at 10. The United States alternatively moves that the complaint be dismissed for failure to state a claim. *See id.* at 12. The motion is fully briefed and ripe for resolution.

## LEGAL STANDARD

"[S]tanding and privity of contract with the government are questions of subject matter jurisdiction." *Martin v. United States*, 548 U.S. 904 (2006). When jurisdiction is challenged, the "[p]laintiff bears the burden of establishing jurisdiction by a preponderance of the evidence." *Park Prop. Assocs., L.P. v. United States*, 916 F.3d 998, 1002 (Fed. Cir. 2019); *see also Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (holding that the party invoking federal jurisdiction bears the burden of establishing standing). That burden applies to pro se plaintiffs, even though their complaints are held to "less stringent standards than formal pleadings drafted by lawyers." *Hale v. United States*, 143 Fed. Cl. 180, 184 (2019) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)); *see also Bernard v. United States*, 59 Fed. Cl. 497, 499 (2004).

When reviewing a 12(b)(1) motion to dismiss for lack of jurisdiction, the "court must accept as true all undisputed facts asserted in the plaintiff's complaint and draw all reasonable inferences in favor of the plaintiff." *Acevedo v. United States*, 824 F.3d 1365, 1368 (Fed. Cir. 2016) (quoting *Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1163 (Fed. Cir. 2011)). Moreover, "where a motion to dismiss challenges the complaint's jurisdictional allegations, 'the allegations in the complaint are not controlling, and only uncontroverted factual allegations are accepted as true.' . . . In such a situation, the court 'may review evidence extrinsic to the pleadings.'" *DDS Holdings, Inc.*, 158 Fed. Cl. at 436 (quoting *Cedars-Sinai Med. Ctr.*, 11 F.3d at 1583). "If the court has doubts regarding jurisdiction, it may . . . and often must, find facts on its own." *Martinez v. United States*, 48 Fed. Cl. 851, 857 (2001), *aff'd in part*, 281 F.3d 1376 (Fed. Cir. 2002) (citing *RHI Holdings, Inc. v. United States*, 142 F.3d 1459, 1461–62 (Fed. Cir. 1998)). The Court also may consider public records including "cases of public record in which [plaintiff] was a litigant." *Jarvis v. United States*, No. 2022-1006, 2022 WL 1009728 at *3 (Fed. Cir. Apr. 5, 2022).

## DISCUSSION

The Tucker Act gives this Court jurisdiction over claims based on "any express or implied contract with the United States." 28 U.S.C. § 1491(a)(1). "To have standing to sue the sovereign on a contract claim, a plaintiff must be in privity of contract with the United States." *Park Props. Assocs., L.P.*, 916 F.3d at 1002 (holding that a plaintiff has standing to sue on a contract claim "*only if* there is privity of contract between a plaintiff[] and the [United States]") (emphasis added); *accord Anderson v. United States*, 344 F.3d 1343 (Fed. Cir. 2003); *Katz v. Cisneros*, 16 F.3d 1204, 1210 (Fed. Cir. 1994) ("Absent privity between [plaintiffs] and the

5

government, there is no case."); 28 U.S.C. § 1491(a)(1).  Absent privity there is no waiver of sovereign immunity because "[t]he government consents to be sued only by those with whom it has privity of contract."  *Erickson Air Crane Co. of Wash. v. United States*, 731 F.2d 810, 813 (Fed. Cir. 1984); *see also Cienega Gardens v. United States*, 194 F.3d 1231, 1239 (Fed. Cir. 1998) ("The effect of finding privity of contract between a party and the United States is to find a waiver of sovereign immunity.").  For a plaintiff to be in privity with the United States "the contract must be between the plaintiff and the government."  *Ransom v. United States*, 900 F.2d 242, 244 (Fed. Cir. 2003); *see also Fidelity & Guar. Ins. Underwriters, Inc. v. United States*, 805 F.3d 1082, 1087 (Fed. Cir. 2015).  "In other words, if a party is not a signatory to a contract with the government, it [does not have standing] to bring a direct suit for breach of contract against the government."  *Fidelity & Guar. Ins. Underwriters, Inc.*, 805 F.3d at 1087.

The United States argues that "Mr. van Leeuwen cannot establish standing to pursue a breach-of-contract claim because he fails to show that he was a party to the underlying contract."  Mot. to Dismiss at 10.  Specifically, the United States contends that "Lionshare—not Mr. van Leeuwen—is in privity with the United States" because Lionshare—not Mr. van Leeuwen—"was the purchaser of the boat at issue in this case."  *Id.* at 11.  Mr. van Leeuwen counters that he, personally, was the party who contracted with the United States.  *See* Resp. at 11–13.

The Court agrees with the United States.  Mr. van Leeuwen admits in his briefing that he completed the mandatory GSA registration under *Lionshare's* "company name."  Resp. at 11–12 ("Lionshare Properties is filled out as a company name at the GSA auction.").  Lionshare—not Mr. van Leeuwen—"agreed to the Terms and Conditions of the [GSA auction]."[8]  Compl., Ex. J ("When you registered on GSAAuctions.gov website, you agreed to the Terms and Conditions of the sale before being accepted as an active bidder.").  Thus, Lionshare—not Mr. van Leeuwen—was "the signatory to [the Agreement] with the government."  *Fidelity & Guar. Ins. Underwriters, Inc.*, 805 F.3d at 1087; *Cienega Gardens*, 194 F.3d at 1243 ("The critical point is that the contract documents simply do not show privity of contract.").  As Mr. van Leeuwen was "clearly not [a] signator[y] . . . [he] could not therefore be in direct privity with the sovereign."  *Anderson*, 344 F.3d at 1351.

Mr. van Leeuwen cannot cure this standing defect by arguing that he was only "*doing business as* Lionshare," Am. Compl. ¶¶ 6, 7, 9, as "[a] corporation is generally considered to be a

---

[8] Mr. van Leeuwen argues that the operative contract was actually "made between [him, individually] and the GSA Contracting Officer," because the actual "transaction was made outside [] the auction"— when he contacted GSA via email and "revived" his bid—such that "the first contract was replaced with a second contract."  Resp. at 11; Ex. A-5 ("By reviving my bid, this will constitute a Legal, Binding Contract.").  Mr. van Leeuwen's argument, while clever, is nonetheless immaterial.  That "second contract" merely "revives" the *initial* bid, and Mr. van Leeuwen admits that he used Lionshare's GSA account to place that *initial* bid, that he used his Lionshare email account to revive the bid, and that he used Lionshare's GSA account bidder number when "reviving" the bid.  *Id.* at 12.  Importantly, a "revived" bid is subject to those same terms and conditions as those that control "initial bids" in GSA auctions.  *Id.*, Ex. A-5 ("I recognize and accept that I am subject to the Online Sale Terms and Conditions.").  Thus, Mr. van Leeuwen is also not a party to that "second contract."

separate legal entity." *S. Cal. Fed. Sav. & Loan Ass'n v. United States*, 422 F.3d 1319, 1332 (Fed. Cir. 2005); *see Monbo v. United States*, 175 Fed. Cl. 440, 453 (2025) (collecting cases). Thus, Lionshare is a "separate legal entity" with its own rights and obligations. *S. Cal. Fed. Sav. & Loan Ass'n*, 422 F.3d at 1332; *Lanzce G. Douglas, Inc. v. Dep't of Rev.*, 25 Wash. App. 2d 893, 905 (2023) ("[O]wners of an LLC are separate from the LLC entity."). Indeed, this [C]ourt has regularly acknowledged the legal distinction between a corporation and its shareholders and rejected claims by shareholders to assert a breach of contract claim on behalf of the corporation." *S. Cal. Fed. Sav. & Loan Ass'n*, 422 F.3d at 1332 (collecting cases). Consequently, Mr. van Leeuwen's suggestion "that he and [the company] are 'one and the same,' . . . is not viable in this court." *Ogunniyi v. United States*, 124 Fed. Cl. 525, 532 (2015).

Nor can Mr. van Leeuwen cure this defect by relying on his status as both registered agent and sole owner of Lionshare. *See Monbo*, 175 Fed. Cl. at 458 (holding that plaintiff, "owner and President of [the corporation] MGI" lacked standing to bring a bid protest individually despite a "close relationship" between her and MGI"); *see also M Nicolas Enters., LLC v. United States*, 155 Fed. Cl. 608 (2021) (holding that plaintiff, a sole owner of the limited liability entity WWHS lacked standing to bring claims in her own name because "WWHS, as a limited liability company, is a legal entity distinct from [plaintiff]"). Rather, "[t]he president or sole shareholder of a corporation, although he may have signed contractual documents on behalf of the corporation does not have standing to sue on a contract entered into between the corpor[ation] and the United States." *Comput. Prods. Intern. v. United States*, 26 Cl. Ct. 518, 528 (1992); *see also Algonac Mfg. Co. v. United States*, 192 Ct. Cl. 649 (1970) (holding that the plaintiff company's president and sole shareholder had no contract with the United States in his individual capacity); *Affourtit v. United States*, 79 Fed. Cl. 776, 779 (2008) (same); *Robo Wash, Inc. v. United States*, 223 Ct. Cl. 693 (1980) (same); *S.R. Weinstock & Assocs., Inc. v. United States*, 233 Ct. Cl. 677, 688 (1980) ("The contract was between the corporation and the United States. That the individual may be a corporate officer, or sole stockholder . . . has no bearing."). Mr. van Leeuwen also cannot cure this defect by relying on any role he had in funding the purchase of the boat or negotiating the Agreement.[9] *See* Resp. at 12. The Federal Circuit has "refused to allow shareholders to rely on their involvement in the negotiation process or their role in funding the transaction to alter their chosen legal status." *S. Cal. Fed. Sav. & Loan Ass'n*, 422 F.3d at 1332 (citing *Cain v. United States*, 350 F.3d 1309 (Fed. Cir. 2003); *FDIC. v. United States*, 342 F.3d 1313 (Fed. Cir. 2003)); *see also Woodruff v. United States*, 122 Fed. Cl. 761, 776 (2015) (collecting cases).

Finally, nothing before the Court supports Mr. van Leeuwen's argument that he actually entered into the Agreement in his individual capacity and that "Lionshare Properties was not involved." Resp. at 12; *see* Compl., Ex. F (In fact, at points Mr. van Leeuwen appears to concede that he is distinct from Lionshare—"Without being the owner of the boat, Lionshare cannot prevent you from auctioning it off as abandoned"). Rather, throughout his Amended Complaint, Mr. van Leeuwen states that he was "doing business as Lionshare." Am. Compl. ¶¶

---

[9] In his response to the motion, Mr. van Leeuwen asserts that the $61,025.00 for the boat and trailer "was paid by Montare LLC, another company owned by Matthjis van Leeuwen. This transaction is classified . . . as a private withdrawal. As sole owner [he] has the full authority to do so. He owns the company and can withdraw funds for a private transaction." Resp. at 12.

6, 7, 9. Lionshare was instrumental to the parties' performance under the Agreement. *Comput. Prods. Intern.*, 26 Cl. Ct. at 529. For example, (1) all communication between Mr. van Leeuwen, GSA, and NPS was made using a Lionshare email address, Resp. at 11–12; (2) the purchase receipt for the boat identifies the "purchaser" as "VAN LEEUWEN, MATTHYS, LIONSHARE PROPERTIES," and identifies the relevant contact email as Lionshare's email address, Compl., Ex. B; (3) when the shipper requested contact information to complete the "Certificate of Insurance" prior to transport, Mr. van Leeuwen responded, "It needs to be [under] LionShare Properties" and provided Lionshare's address, *id.*, Ex. C at 6; and (4) when responding to Dynamite's phone call indicating that the boat was scheduled to be auctioned off as abandoned property, Mr. van Leeuwen "urge[] [NPS], as the boat owner, to prevent [Dynamite] from the abandonment action and if they do not take action [*sic*], they'll have to reimburse Lionshare for the boat purchase," *id.*, Ex. F. Additionally, all persons involved with the transaction performed as though Lionshare was the actual party to the Agreement. *See* Compl., Exs. F (Mr. van Leeuwen writes that Dynamite's insurer, Next Insurance, "directed [Dynamite] to bill Lionshare Properties" for the cost of towing and storage), H at 1 (NPS writes, "On receipt of your . . . email regarding the intent for Lionshare Properties (claimant) to file litigation, I sent your complaint to the U.S. Department of Interior"). Accordingly, despite Mr. van Leeuwen's contention that "Lionshare [] was not involved in the transaction in any way or form," Resp. at 11, the Court finds that Lionshare *was* involved "throughout the contract negotiations, the performance of the contract, and when [] fil[ing] a complaint with this [C]ourt." *Comput. Prods. Intern.*, 26 Cl. Ct. at 529.

In sum, Lionshare—not Mr. van Leeuwen—was the party to the underlying Agreement with the United States. Mr. van Leeuwen thus lacks privity of contract with the United States. Accordingly, Mr. van Leeuwen lacks standing to assert his breach-of-contract claims, and the Court must dismiss Mr. van Leeuwen's claims for lack of jurisdiction. *See Ogunniyi*, 142 Fed. Cl. at 533. Having so ruled, it is unnecessary for the Court to reach the United States' alternative request that this case be dismissed for failure to state a claim.

The Court recognizes that Mr. van Leeuwen may be frustrated with this outcome—because the Court holds that Lionshare was the party to the underlying Agreement, Mr. van Leeuwen cannot assert his breach claims individually.[10] And because Lionshare is an LLC, Mr. van Leeuwen cannot assert the breach claims on behalf of Lionshare pro se. *See* RCFC 83(1)(a)(3) ("An individual who is not an attorney may represent oneself or a member of one's immediate family, but may not represent a corporation, an entity, or any other person in any proceeding before this court."). Indeed, "[t]he requirement of Rule 81[] that a corporation be represented by an attorney in the Court of Federal Claims is clear and unqualified, and the plain language of the rule does not contemplate exceptions." *Talasila, Inc. v. United States*, 240 F.3d 1064, 1067 (Fed. Cir. 2001). While the Court appreciates that Mr. van Leeuwen had difficult experiences with counsel, it "cannot waive this rule, even for cases of severe [] hardship." *Balbach v. United States*, 119 Fed. Cl. 681, 683 (2015).

---

[10] The Court notes that the United States concedes that, as matters stand—*Lionshare is the owner of the boat*. *See* Mot. to Dismiss at 9, n.6. Mr. van Leeuwen remains free to collect Lionshare's boat.

## CONCLUSION

For the reasons set forth herein, Mr. van Leeuwen lacks standing to assert his breach-of-contract claims, and they are subject to dismissal pursuant to RCFC 12(b)(1).  Accordingly, the Court hereby **GRANTS** the Government's Motion to Dismiss, ECF No. 26.  The Clerk shall enter **JUDGMENT** accordingly.

**IT IS SO ORDERED.**

ROBIN M. MERIWEATHER
Judge